UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO: 05-186

KERRY DE CAY                                 SECTION: "J" (1)
STANFORD BARRE

## ORDER AND REASONS

Before the Court are the Louisiana Sheriff's Pension and
Relief Fund's ("LSPRF") **Briefs in Support of Claimed Exemption
for Seizure of Certain Funds (Rec. Docs. 398 & 406)** regarding the
garnishment proceedings against defendants Stanford Barre
("Barre") and Kerry Decay ("Decay").[1]  Also before the Court is
Barre's **Memorandum in Opposition to Application for Writ of
Garnishment (Rec. Doc. 416)**.  The United States ("the
Government") opposes all three challenges to the garnishment
proceedings, and seeks an immediate final order of garnishment.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

The Court and the parties are intimately familiar with the
background facts of this criminal prosecution, and thus a
detailed summary is not necessary.  However, the Court will

_____

[1]  Decay was granted an initial extension to file an
opposition to the garnishment proceedings (Rec. Doc. 387).  Decay
sought another extension of time within which to oppose the
garnishment (Rec. Doc. 400) which was denied.  As such, Decay has
not personally filed any opposition to the instant garnishment
proceedings.

provide a brief summary of the garnishment proceedings subsequent to the completion of the prosecutions against Barre and Decay.

After their respective guilty pleas, the Court rendered a restitution judgment against Decay, Barre, and the other defendants in this case in the amount of $1,064,662.15, and ordered that the liability would be joint and several for all defendants. This judgment was in the context of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §3613. In conjunction with this judgment, the Government filed for and was granted writs of garnishment against the LSPRF in connection with property and/or monies believed to be due to Decay and Barre. The LSPRF's answers to the garnishment interrogatories in the Decay garnishment indicate that Decay is not currently owed any amount by the LSPRF, but is eligible for retirement benefits as of 2010 (early retirement) or 2015 and is also entitled to request an immediate return of $77,898 worth of his employee contributions. The Government in these garnishment proceedings seeks only the $77,898 amount that Decay is entitled to request immediately.[2] The LSPRF'S answers to the Barre garnishment interrogatories indicate a monthly benefit of $2464.72 payable to Barre. However, the LSPRF claims various exemptions from

---

[2] The United States Opposition to the LSPRF's objections specifically indicates that the present garnishment proceedings against Decay seek only the $77,898 which Decay has the present right to collect as conceded by the LSPRF in its garnishment answers.

garnishment despite the outstanding judgments against Decay and Barre, and despite the LSPRF's admitted retention of property belonging to the judgment debtors.

## **THE PARTIES ARGUMENTS**

The LSPRF asserts essentially the same basic exemption grounds in both the Decay and Barre garnishment proceedings.[3] Initially, the LSPRF argues that both federal and Louisiana state law restrict the alienability of pension benefits to very limited circumstances. First, the LSPRF refers to the IRS Code, which restricts the alienation or assignment of benefits for any plan qualified under the Code. The LSPRF notes the Supreme Court's decision in Guidry v. Sheet Metal Workers National Pension Fund, in which the Court refused to allow garnishment of the defendant's retirement benefits even though the defendant was guilty of embezzling money from the union that contributed to the plan from which those benefits arose. 493 U.S. 365 (1990). Specifically, the LSPRF quotes the Guidry Court's holding that the Code provides "a considered congressional policy choice, a decision to safeguard a stream of income for pensioners . . . even if the decision prevents others from securing relief for the wrong done them." Id. at 376. Based on Guidry, the LSPRF argues

---

[3] In fact, the LSPRF's two briefs in support of their objections are identical except for the obviously unique fund entitlements of Decay and Barre and certain specific arguments that pertain to them individually.

that Decay and Barre's benefits cannot be garnished.

The LSPRF also argues that Louisiana law, which governs administration of the LSPRF, also provides only narrow exceptions to the non-garnishment rule for LSPRF benefits, none of which applies in this case.  In the case of Decay, the LSPRF notes that Louisiana law only allows for garnishment of *benefits*, and then only for child support payments.[4]  Because Decay does not receive any *benefits*, and is only entitled to request return of his *contributions*, there is no statutory grounds for garnishment in these circumstances.  Further, and as to both Decay and Barre, there is no criminal restitution exception to the non-garnishment rule.  Therefore, the LSPRF asserts that the present garnishment proceedings are improper.

In addition, the LSPRF contends that the Louisiana Constitution governs these garnishment proceedings.  First, and generally as to both Decay and Barre, the LSPRF argues that under the Tenth Amendment of the United States Constitution, as well as under federal statutory and jurisprudential law, Louisiana retains broad police powers, which include the power to administer governmental retirement plans free of federal interference.  The LSPRF argues that for the MVRA to supercede Louisiana's Tenth Amendment powers to administer the LSPRF, the MVRA would have to *clearly state* its intention to overrule state

---

[4]  See La. Rev. Stat. Ann. §11:292 & 2182 (2008).

law.  However, the LSPRF argues that like the ERISA statutes
which the Fifth Circuit has held do not affect government
retirement plans due federalism concerns, the MVRA does not
clearly supercede Louisiana state law.

Second, and as to the Decay garnishment, the LSRPF cites
Article X of the Louisiana Constitution, which requires that any
government pension plan remain actuarially sound and guarantees
benefits to members of statewide retirement funds.  La. Const.
art. X, §29(E).  As such, the LSPRF argues that even if the LSPRF
were to turn over Decay's contribution amount, it would still
have to pay him benefits under Louisiana's Constitution.  Thus,
the LSPRF argues that allowing garnishment of the $77,898 of
Decay's contributions, when the fund will still be required under
the Louisiana Constitution to make eventual payments of his
benefits after the removal of his contributions, would threaten
the mandated actuarial soundness of the LSPRF.

Finally, and with respect to both the Decay and Barre
garnishments, the LSPRF points to Section (E)(5)(a) of Article X
of the Louisiana Constitution:

> [a]ll assets, proceeds, or income of the state and
> statewide public retirement systems, and all
> contributions and payments made to the system to provide
> for retirement and related benefits shall be held,
> invested as authorized by law, or disbursed as in trust
> for the **exclusive purpose of providing such benefits,**
> refunds, and administrative expenses under the management
> of the board of trustees **and shall not be encumbered for**

**or diverted to any other purpose.**

La. Const. art. X, §29(E) (emphasis added). In addition to this constitutional authority, the LSPRF cites Louisiana Revised Statute §11:2176(A)(1), which provides that "[a]t no time shall it be possible for the fund assets to be used for, or diverted to, **any person other than for the exclusive benefit of the members and their beneficiaries**." La. Rev. Stat. Ann. §11:2176(A)(1) (2008) (emphasis added). The LSPRF argues that these provisions clearly indicate that garnishment of LSPRF benefits and/or contributions, which would divert those monies from members or beneficiaries of the LSPRF, is prohibited as a matter of Louisiana law. Thus, the LSPRF asserts that the present garnishment proceedings are invalid.

In addition, Barre has filed an opposition through counsel to these garnishment proceedings. Barre's opposition is based primarily on the Federal Debt Collection Procedures Act of 1990 ("FDCPA"), codified at 28 U.S.C. §3205(a). Specifically, Barre points to the garnishment exemption provisions of the FDCPA, which exempt any property from garnishment that is exempt under . . . State or local law that is applicable on the date of filing of the application for remedy." 28 U.S.C. §3014(a)(2)(A). In addition, Barre cites Louisiana Revised Statutes Section 11:2182, which provides a blanket exemption from garnishment for LSPRF benefits and contributions. Barre thus contends that because the

Government's "sole basis of authority" for garnishing Barre's pension benefits is the FDCPA, the present garnishment is prohibited as a matter of Louisiana law in concert with the FDCPA.

Furthermore, Barre echoes the LSPRF's arguments based on the Tenth Amendment, and notes that there is no congressional intent evidenced in any statute that indicates an authorization to override state laws governing government-administered pension plans. Very generally, Barre contends that the present garnishment proceedings against a state-operated pension fund are essentially a federal mandate issued against state officials, which is a clear violation of the Tenth Amendment.

Finally, and in the alternative, Barre argues that if his pension benefits are subject to garnishment, both federal and Louisiana law limit that garnishment to no more than 25% of his disposable earnings, or the amount by which his disposable earnings for a weekly period exceed thirty times the federal minimum wage.[5]

In opposition to the LSPRF's and Barre's challenges to these garnishment proceedings, the Government initially notes that the FDCPA does not itself provide that a garnishee may file objections (as the LSRPF has done in this case). However, the

_____

[5] See 15 U.S.C. §1673 (2008) and La. Rev. Stat. Ann. §13:3881 (2008).

Government proposes that to the extent that the LSPRF has

standing to file such objections, it should bear the burden under

the FDCPA of proving the validity of its objections and its

exemption from garnishment.

Next, the Government disputes the LSPRF's contention that

the IRS Code and <u>Guidry</u> protect Decay's pension funds from

garnishment in the restitution judgment.  Specifically, the

Government cites the MVRA enforcement section, which provides

that "an order of restitution may be enforced by the United

States in the manner provided for in . . . subchapter B of

chapter 229 of this title [i.e. the title governing collection of

criminal fines.]" 18 U.S.C. §3664(m)(1)(A)(I).  The referenced

"subchapter B" provides that "[n]otwithstanding any other Federal

law . . . a judgment [of restitution] may be enforced against **all**

**property or right to property of the person**" except "**property**

**exempt from levy for taxes pursuant to section 6334(a)"** of the

IRS Code.[6]  Based on these provisions, the Government argues that

the *only* exemptions from garnishment in a restitution judgment

enforcement are those provided in the IRS Code.  See <u>United</u>

<u>States v. Citigroup Global Mkts., Inc.</u>, 569 F. Supp. 2d 708, 710

_____

[6]  See 26 U.S.C. §6334.  This section of the IRS Code
provides a list of specific types of property that are exempt
from tax levy.  While certain very narrowly defined pension
benefits are exempted (such as Railroad Retirement Act benefits),
there is no blanket exemption for pension payments in §6334.  26
U.S.C. §6334(a)(6).

(E.D. Tex. 2007).  Thus, based on the fact that the only

exemptions for restitution under the MVRA are those included in

§6334(a) of the IRS Code, the Government argues that the LSPRF's

reliance on the exemptions provided in §401(a)(13) of the IRS

Code is misplaced.  The Government goes on to note that several

federal courts have held in the ERISA context (which the LSPRF

relies on as a purportedly analogous context to the one at issue

in this case) that "the anti-alienation provisions in the federal

pension statutes would not suffice to protect the retirement

benefits from garnishment . . . enforcing criminal . . .

restitution orders."  See, e.g., <u>United States v. Novak</u>, 476 F.3d

at 1047-57 (9th Cir. 2007).

The Government also criticizes the LSPRF's reliance on

<u>Guidry</u> as unfounded.  First, the Government notes that <u>Guidry</u> did

not involve collection of a restitution order under the MVRA.

Second, <u>Guidry</u> applied the anti-alienation provision of ERISA,

which concededly only applies to *private*, not *public*, pension

plans.  Finally, the Government cites numerous cases that stand

for the proposition that <u>Guidry</u> does not override the MVRA's

enforcement provisions, and that the MVRA was itself a

congressional response to "the Supreme Court's invitation in

<u>Guidry</u> [to create exceptions to ERISA]."  See <u>United States v.

Irving</u>, 452 F.3d 110, 125 (2d Cir. 2006).  As such, and under the

plain language of the MVRA and the sole §6334 exception to the

MVRA enforcement provisions, Decay and Barre's LSPRF benefits and/or contributions are not exempt from garnishment.

Next, the Government refutes the LSPRF's and Barre's reliance on Louisiana law for their challenges to the present garnishment proceedings. The Government concedes that the FDCPA allows for exemption of property under state law; however, the MVRA provides that "section 3014 . . . of title 28 [which incorporates state-law exemptions] **shall not apply to enforcement [of fines and restitution] under Federal law**." 18 U.S.C. §3613(a)(2). Thus, despite the FDCPA's provisions allowing for state-law exemptions, the MVRA *specifically provides* that the only exemptions in restitution enforcement are those provided in IRS Code §6334. Thus, the Government contends that the LSPRF's state-law reliance is unfounded, and notes that some federal courts have even specifically held that "federal law expressly preempts state exemptions when the federal government is attempting to collect a fine or restitution." United States v. McClanahan, 2006 WL 1455698, *4 (S.D.W.V. 2006).

As for the LSPRF's and Barre's reliance on the Tenth Amendment as the trigger for applicability of Louisiana law in this case, the Government cites the Supremacy Clause of the United States Constitution to argue that the MVRA preempts any inconsistent state law that might preclude or encumber enforcement of a restitution judgment. In addition, the

Government notes the "pro-victim" policy of the MVRA, which was changed to a mandatory as opposed to a discretionary restitution framework to ensure that victims of crimes were adequately compensated for their losses.  In this regard, the Government cites the First Circuit's decision in United States v. Hyde, which held that "the Supremacy Clause provides the underpinning for the Federal Government's right to sweep aside state-created exemptions" for payment of federal restitution.  497 F.3d 103, 108 n.7 (1st. Cir. 2007).  As such, the Government contends that it has the right to step into Decay's shoes and collect the $77,898 of contributions to which Decay is presently entitled, and also has the right to collect Barre's monthly benefits from the LSPRF.

Finally, the Government responds to Barre's alternative argument regarding the 25% statutory garnishment limit by asserting that the relevant statutory provisions refute Barre's position.  The Government concedes that the Consumer Credit Protection Act ("CCPA"), which Barre cites in support of his argument, is incorporated into the MVRA's enforcement provisions and does limit garnishment to 25% of earnings, including pension payments.  However, the Government notes that the CCPA has been interpreted to limit garnishment only for periodic payments *into* a pension plan, not on payments *from* the pension plan to the retiree-debtor.  See United States v. Belan, 2008 WL 2444496, *4

11

(E.D. Mich. 2008).  Further, the Supreme Court has held that "earnings" under the CCPA are limited to "periodic payments of compensation and do not pertain to every asset that is traceable in some way to such compensation."  Kolkaszka v. Belford, 417 U.S. 642, 651 (1974).  The Government notes that some cases have limited pension-fund garnishment to the 25% CCPA limit, although without any analysis or discussion.  Nonetheless, the Government asserts that the better and more thoroughly analyzed cases have decided, in adherence to the plain language of the CCPA, that the 25% limit under the CCPA does not apply to benefits paid *from* a pension plan.  Finally, as a matter of policy, the Government notes that the 25% limit in the CCPA was enacted to reduce the potentially frequent unemployment of the debtor as a result of unrestricted garnishment of weekly wages.  See 15 U.S.C. §1671(a)(2).  However, while this policy basis for the limit makes sense in the context of payments *into* a pension fund, it is irrelevant to payments *from* a pension fund, which can only be made when the retiree-debtor has already left the work force by retiring.  Thus, the Government seeks garnishment of the full amount of Barre's monthly payments from the LSPRF.

## DISCUSSION

A.   **Government's Ability to Garnish Decay and Barre's LSPRF benefits/contributions**

The MVRA provides that a judgment of restitution may be

12

enforced under the same statutory provisions that govern the
enforcement of criminal fines.  18 U.S.C. §3664(m)(1)(A)(I).  The
relevant provisions for enforcement of fines/restitution provide
the following exceptions:

> Notwithstanding any other Federal . . . a judgment
> imposing a fine [and/or restitution] **may be enforced
> against all property or rights to property of the person
> fined**, <u>**except**</u> that--
>
> (1) **property exempt from levy for taxes pursuant to
> section 6334**(a)(1), (2), (3), (4), (5), (6), (7), (8),
> (10), and (12) of the Internal Revenue Code of 1986 shall
> be exempt from enforcement of the judgment under Federal
> law;
>
> (2) **section 3014 of chapter 176 of title 28 shall not
> apply to enforcement under Federal law**; and
>
> (3) **the provisions of section 303 of the Consumer Credit
> Protection Act (15 U.S.C. 1673) shall apply to
> enforcement of the judgment under Federal law or State
> law.**

18 U.S.C. § 3613 (emphasis added).  Section 6334 of the IRS Code
lists several specific categories of property, including certain
specific types of federal pensions, that are exempt from tax
levy, and as such are exempt from enforcement under the MVRA.  26
U.S.C. §6334.  In addition to the applicability of Section 6334
of the IRS Code, the MVRA's enforcement provisions expressly note
the *inapplicability* of Section 3014 of chapter 176 of title 28 of
the United States Code (i.e. the FDCPA).  Section 3014 of the
FDCPA allows a debtor to invoke exemption of any property that is
exempt under the state or local law of the debtor's domicile that

is applicable on the date of filing of the relevant FDCPA remedy application.  See 28 U.S.C.A. § 3014(a)(2)(A).  Thus, under the plain language of the MVRA, no state exemptions are applicable to an enforcement action arising from a restitution judgment.

This conclusion has been reached by several courts that have addressed the question of whether the MVRA's enforcement provisions preempt state law pension plan anti-alienability provisions.  See, e.g., <u>United States v. McClanahan</u>, 2006 WL 1455698, *4 (S.D.W. Va. 2006) ("Although West Virginia prohibits the garnishment of state pensions, federal law [i.e. the MVRA] preempts state exemptions when the federal government is attempting to collect a fine or restitution."); <u>United State v. Wilson</u>, 2007 WL 4557774, *1 n. 2 (S.D. Ga. 2007) ("To the extent that state law . . . conflicts with federal law authorizing the garnishment of Defendant's pension benefits [under the MVRA], it is preempted); United <u>States v. Salinski</u>, 1999 WL 824809 (6th Cir. 1999) (holding that "state exemptions are not relevant" when a garnishment "arose from [a] federal criminal sentence").  In fact, at least one other district court in the Fifth Circuit has unequivocally held that the MVRA and FDCPA enforcement provisions preempt state law non-alienability and/or exemption statutes in the context of pension exemptions:

> The plain language of [the MVRA] indicates that the only exemptions for the criminal debtor owing restitution are set out in the referenced provisions of 26 U.S.C. § 6334(a) of the Internal Revenue Service Code.  More

> specifically . . . the legislative history makes it clear
> that §3613(a) was intended to provide a federal
> collection procedure independent of State laws.

United States v. Citigroup Global Mkts, Inc.,569 F. Supp.2d 708,

711 (E.D. Tex. 2007) (internal quotations and citations omitted).

Therefore, under the plain language of the MVRA and the

relevant jurisprudence, Decay and Barre's pension benefits and/or

contributions are not exempt from garnishment in connection with

this Court's restitution order. Despite the LSPRF's and Barre's

arguments under Louisiana law, the MVRA by its own terms preempts

the applicability of state-law based garnishment exemptions. As

such, the LSPRF and Barre's objections should be overruled and

the writs of garnishment issued in this case should proceed as

ordered.

Furthermore, to the extent that the LSPRF disputes the

garnishment of Decay's $77,898 of contributions to the fund, the

same preemption analysis applies, notwithstanding the LSPRF's

Tenth Amendment/state law arguments. This result is supported by

the Ninth Circuit's decision in Novak, which held that "the

government can immediately garnish the corpus of a retirement

plan to satisfy a MVRA judgment - rather than merely obtain post-

retirement payments that . . . if, but only if, the terms of the

plan allow the defendant to demand a lump sum at the present

time." 476 F.3d at 1063. Although the Novak case concerned the

non-alienability provisions of an ERISA-governed pension plan,
the same analysis should apply in the present case.   Thus,
because Decay is entitled to elect an immediate return of the
$77,898 accrued sum of his fund contributions to the LSPRF, the
Government is entitled to garnish this entire amount.

**B.    The Amount of Barre's Benefits Subject to Garnishment
        under the CCPA**

The MVRA provides that the CCPA "shall apply to enforcement
of [restitution] under Federal law."  18 U.S.C. §3613(a)(3).  The
relevant provisions of the CCPA restrict garnishment to the
"**earnings** of an individual for any workweek" in an amount not
more than (1) "25 per centum of his disposable earnings for that
week;" or (2) "the amount by which his disposable earnings for
that week exceed thirty times the Federal minimum hourly wage."
15 U.S.C. §1673 (emphasis added).  Further, the CCPA defines
"earnings" to include "periodic payments pursuant to a pension or
retirement program."  15 U.S.C. §1672(a).  The Supreme Court has
held generally in the context of the "earnings" definition under
the CCPA that "earnings" are "limited to periodic payments of
compensation and (do) not pertain to every asset that is
traceable in some way to such compensation."  <u>Kokoszka v.
Belford</u>, 417 U.S. 642, 650 (1974) (denying CCPA 25% limitation on
garnishment of income tax refund, despite the fact that tax
refund was result of income earned).

16

With respect to the pension-based definition of "earnings," some courts have held that "earnings" for CCPA garnishment limitation purposes refers only to payments *into* a debtor's pension plan, but does not include restrictions on garnishment of benefit payments *out of* a debtor's pension plan. See <u>United States v. Laws</u>, 352 F. Supp. 2d 707, 713-14 (E.D. Va. 2004); <u>United States v. Belan</u>, 2008 WL 2444496, *4 (E.D. Mich. 2008); <u>United States v. Crawford</u>, 2006 WL 2458710, *3 (E.D. Cal. 2006) ("[O]nce passed to a retirement account or annuity in the hands of the employee, the funds in the account or annuity are not 'earnings' under the CCPA, and thus, not subject to the 25% cap, even if they are distributed in periodic payments . . . ."); <u>Aetna Cas. & Surety Co. v. Rodco Autobody</u>, 965 F. Supp. 104, 109 (D. Mass.1996) (holding that voluntary employee contributions to individual retirement account did not constitute "earnings" under CCPA). This analysis is based on the premise that "the employer's periodic payments *to* a retirement program are includable as 'earnings' [under the CCPA], but once those funds are in the retirement account future distributions *from* the account do not themselves constitute 'earnings.'" <u>Belan</u>, 2008 WL 2444496 at *4 n.3. Furthermore, the fact that the CCPA expressly refers to "earnings" in a "workweek" suggests that retirement plan benefits, which are not paid in correspondence with any "workweek," are not subject to the CCPA's garnishment

limitations.  Finally, "the Congressional purpose in passing the CCPA . . . was to reduce the likelihood that garnishment would result in the debtor losing (or quitting) employment . . . [but the] garnishment of funds which have already passed to the debtor does not create the same risk that the debtor will lose interest in being employed." Laws, 352 F. Supp. 2d at 713.  Thus, these courts have essentially held that "[i]t is not clear from the plain language of the [CCPA] to what extent [pension] funds are protected once they leave the hands of the employer, even if the employee later receives the funds in periodic payments" as a pension benefit.  Id.

Nonetheless, other courts have found the 25% garnishment limitation in the CCPA applicable to pension benefit payments. See United States v. Wilson, 2007 WL 4557774 (S.D. Ga. 2007); United States v. McClanahan, 2006 WL 1455698 (S.D.W. Va. 2006). However, these decisions were rendered without any meaningful analysis of the language of the CCPA's "earnings" definition as it relates to pension benefit payments.  See Wilson, 2007 WL 4557774 at *1 (noting Government's concession in the case that the 25% limitation of the CCPA applied to garnishment of monthly retirement benefits); McClanahan, 2006 WL 1455698 at *3 (finding that "under clear statutory language, it appears the Government may garnish only 25% of the Defendant's pension," but without any in depth analysis of the "earnings" definition and in the context

18

of the Government's argument that the Defendant had waived her right to the 25% limitation in her plea agreement).

Based on the overwhelming breadth and persuasiveness of jurisprudence finding that the CCPA 25% garnishment limitation does not apply to pension benefits, and especially in light of the relative analytical dearth of contradictory precedent, the Court agrees with the Government's position that the entire 100% of Barre's pension benefits is subject to garnishment under the MVRA and CCPA.

In fact, the most relevant Fifth Circuit jurisprudence on this issue, while not directly on point, suggests that pension benefits should not be subject to the 25% CCPA garnishment limitation. The Fifth Circuit in <u>In Re Sinclair</u> considered whether Louisiana Revised Statutes §13:3881(B)(1), which exempts 75% of the debtor's disposable earnings from seizure,[7] would restrict seizure of money in the bankrupt's checking account based on the argument that the money was traceable to his wages. 417 F.3d 527, 527-29. In its analysis, the Fifth Circuit considered analogous CCPA precedent construing the definition of the word "earnings" as used in the federal statute. <u>Id</u>. at 531. The Fifth Circuit acknowledged that courts interpreting the

---

[7] La. Rev. Stat. Ann. §13:3881(B)(1) is very similar to §1673 of the CCPA, except that the CCPA states the garnishment restriction in terms of the percentage of a debtor's wages that *can* be garnished, whereas the Louisiana statute states the restriction in terms of a percentage that *cannot* be garnished.

*federal* statute have held that wages do not retain their "earnings" status after they have been deposited into an employee's bank account. Id. (citing <u>Usery v. First Nat'l Bank</u>, 586 F.2d 107 (9ᵗʰ Cir. 1978). On the other hand, the <u>Sinclair</u> Court also noted that several courts interpreting *state* garnishment limitation statutes have held that pension benefits do constitute "earnings" for purposes of the earnings percentage exemption in those state statutes. Id. However, the Fifth Circuit ultimately decided that the state statutes that were found to include pension benefits in their "earnings" definition included broader language indicating that pension benefits should come under the exemption. Id. at 531-32. Likewise, the Northern District of Texas has held, in the context of a claimed CCPA exemption on an income tax refund, that "Federal courts interpreting the meaning of the CCPA earnings exemption . . . have consistently held that payments that would otherwise constitute earnings lose their status as earnings once they pass to the hands or bank accounts of the debtor." <u>United States v. Armstrong</u>, 2005 WL 937857, *4 (N.D. Tex. 2005).

Thus, based on these relevant holdings of Fifth Circuit courts, and in conjunction with the persuasive authority discussed above, the Government is entitled to garnish 100% of Barre's LSPRF pension benefits. Accordingly,

**IT IS ORDERED** that the LSPRF's and Barre's challenges to the

present garnishment proceedings in this matter, as enumerated in the LSPRF's **Briefs in Support of Claimed Exemption for Seizure of Certain Funds (Rec. Docs. 398 & 406)** and Barre's **Memorandum in Opposition to Application for Writ of Garnishment (Rec. Doc. 416),** are hereby **OVERRULED**.  The Government is entitled to pursue garnishment of the full $77,898 amount of Decay's contributions to the LSPRF, as well as the full $2464.72 amount of the monthly benefits paid by the LSPRF to Barre.

New Orleans, Louisiana this 5th day of January, 2009.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE