UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 05-186

KERRY DECAY AND STANFORD                    SECTION: J(1)
BARRE

## ORDER AND REASONS

Before the Court is the Louisiana Sheriff's Pension and
Relief Fund's ("LSPRF") **Motion and Memorandum in Support of
Motion for New Trial and/or to Alter and/or Amend a Judgment
Pursuant to Federal Rules of Civil Procedure Rule 59** in response
to the Final Order of Garnishment (Rec. Doc. 421) ("Garnishment
Order") against the LSPRF for garnishment of the pension funds of
Stanford Barre ("Barre") and Kerry Decay ("Decay").  Also before
the Court is Barre's **Motion for New Trial and/or to Alter and/or
Amend a Judgment Pursuant to Federal Rules of Civil Procedure
Rule 59 (Rec. Doc. 430)** and Decay's **Motion for New Trial and/or
to Alter and/or Amend a Judgment (Rec. Doc. 432)**.  The United
States ("the Government") opposes these motions.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court and the parties are intimately familiar with
the background facts of this criminal prosecution, and thus a
detailed summary is not necessary.  However, the Court will

1

provide a brief summary of the garnishment proceedings subsequent to the completion of the prosecutions against Barre and Decay.

After their respective guilty pleas, the Court rendered a restitution judgment against Decay, Barre, and the other defendants in this case in the amount of $1,064,662.15, and ordered that the liability would be joint and several for all defendants.  This judgment was in the context of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3613.  In conjunction with this judgment, the Government filed for and was granted writs of garnishment against the LSPRF in connection with property and/or monies believed to be due to Decay and Barre. The LSPRF's answers to the garnishment interrogatories in the Decay garnishment indicate that Decay is not currently owed any amount by the LSPRF, but will be eligible fro retirement benefits as of 2010 (early retirement), or 2015, and is also entitled to request an immediate return of $77,898 worth of his employee contributions.  The Government in the garnishment proceedings sought only the $77,898 amount that Decay is entitled to request immediately.  Additionally, the LSPRF's answers to the Barre garnishment interrogatories indicate a monthly benefit of $2464.72 payable to Barre.  However, the LSPRF claimed various exemptions from garnishment despite the outstanding judgments

against Decay and Barre, and despite the LSPRF's admitted retention of property belonging to the judgment debtors.

After entry of the Order and Reasons on the objections to the writs of garnishment, this Court entered the Garnishment Order under the MVRA and the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3205(c)(7), against the pension funds of Decay and Barre. In response the LSPRF filed a motion for new trial or to alter/amend the Garnishment Order. Decay and Barre also filed similar motions challenging the Garnishment Order.

## THE PARTIES' ARGUMENTS

### A.    The LSPRF's Arguments

The LSPRF seeks an amendment to the Garnishment Order which requires the LSPRF to immediately pay to the Government $77,898, the present cash-out value of Decay's contributions to his pension account with the LSPRF. The LSPRF takes issue with the Garnishment Order's failure to address Decay's right to receive pension benefits in the future when he reaches the age for retirement eligibility. The LSPRF argues that the Garnishment Order fails to declare or require a waiver of Decay's future monthly pension as a precondition of immediately cashing out his employee contributions. The LSPRF contends that there is no provision in La. R.S. 11:2175(C)(1) (the statute setting forth the terms of the cash-out option pertinent to these proceedings)

3

relieving the LSPRF of liability to provide retirement benefits
to a beneficiary, as mandated by Article X Section 29(B) of the
Louisiana constitution, if that beneficiary's employee
contributions are removed from the Fund by anyone other than the
beneficiary himself.  The LSPRF also argues that the law is
devoid of any suggestion that garnishment is the equivalent of an
employee's voluntary withdrawal of contributions from a pension
plan before retirement begins.  As such the LSPRF asserts that,
for the LSPRF to meet its state law and constitutional
obligations, this Court must grant the Government authority to
waive on Decay's behalf his right to future benefits as a
condition of the garnishment of his employee contributions.

Additionally, the LSPRF argues as to Barre that garnishment
should be limited to 25% of his monthly pension distributions
under the Consumer Credit Protection Act ("CCPA").  The LSPRF
argues that the Garnishment Order fails to recognize the
distinction between a defined contribution plan and a defined
benefit plan in the context of the amount that can be garnished
from Barre's pension under the CCPA.[1]  In doing so, the LSPRF
urges that because Barre receives periodic payments from a
governmental *defined benefit* pension plan, he has no interest in

---

[1] It is notable that this is the first time that the LSPRF
has brought this argument to the Court's attention.

the fund from which he receives the benefits, no right to demand additional benefits, no right to accelerate or decelerate his benefit payments, and no right to mortgage or otherwise anticipate the payments he receives and will receive from the pension plan administered by the Fund. Consequently, the LSPRF argues that the Court's reliance on the case law cited in the Garnishment Order is misplaced, as those cases did not deal with *defined contribution* annuity contracts, which are treated differently than *defined benefit* plans such as the LSPRF plan. Specifically, the LSPRF argues that <u>United States v. Laws</u> is in fact controlling, but argues that the case "actually says exactly the opposite of what this Court cited it for, once the nature of the retirement plan is fully understood." Similarly, the LSPRF points out that the <u>Crawford</u> case cited in the Final Garnishment Order also involved an annuity contract, which is distinguishable from the LSPRF plan at issue in this case.

Finally, the LSPRF contends that the cases this Court eschewed in its Garnishment Order are in fact the only district court cases which have considered the applicability of the CCPA under analogous circumstances to those in this case. The LSPRF notes that these cases reached the opposite conclusion to the one reached by this Court. Thus, the LSPRF argues that the CCPA limits the garnishment of retirement plan distributions to 25%.

**B.    Barre and Decay's Motions**

Decay's motion adopts the LSPRF's arguments.  Similarly,
Barre's motion adopts and incorporates the LSPRF's arguments and
additionally asserts[2] that his pension funds are part of the
community property of his marriage, and are thus partially the
property of his wife, Barbara Barre.  Therefore, Barre argues
that the pension funds are not subject to 100% garnishment.

As to Barre's community property argument, Barre contends
that his right to a pension was earned during his marriage to
Barbara Barre, and that under Louisiana law, property earned
during the marriage in a community property regime is presumed to
be community property. La. C.C. art. 2338; Robinson v. Robinson,
No. 99-C-3097 (La. 1/17/01) 778 So. 2d 1105.  Moreover, Barre
suggests that the restitution order was imposed on him and him
alone.  Thus, the restitution owed by Barre is criminal in nature
and is not a community debt as provided by statute and analogous
non-Louisiana law.  See Curda-Derickson v. Derickson, 668 N.W.2d
736 (Wis. 2003) (holding that restitution debt for a husband's
embezzlement was not marital debt based on Wisconsin state
statute).

---

[2]  Barre's community property argument, like the LSPRF's
defined benefit/defined contribution argument, is also asserted
for the first time in this Rule 59 motion.

Finally Barre argues that if the government is allowed to garnish Barre's entire pension it will amount to a taking of Barbara Barre's property, thus depriving her of any "right to some semblance of financial security."  Consequently, Barre prays that this Court modify the scope of the Garnishment Order to allow Barbara Barre to seek a partition of the pension in order to preserve her interest or recognize that such an interest exists under the law.

### C.    The Government's Opposition

In response, the Government argues that the Court's order allowing immediate garnishment of Decay's employee contributions to the LSPRF is proper.  The Government contends that the moving parties fail to raise any basis under the governing standard of Fed. R. Civ. P. 59(e) for reconsideration of the Court's prior analysis of these garnishment proceedings, and thus their motions should be denied.

As to the LSPRF's arguments regarding waiver of Decay's right to future benefits, the Government argues the relief sought by the LSPRF is inappropriate for several reasons.  Primarily, the Government submits that in its original objections to the Decay garnishment, the LSPRF failed to raise or identify this argument with any level of specificity to bring it to the attention of the Court or the Government.  As such, a motion to

amend/alter the Court's order is an improper mechanism by which to raise this untimely argument.

Nonetheless, the Government further argues that the LSPRF's concern is premature because, as admitted by the LSPRF, Decay would not be eligible for monthly retirement benefits until 2010, at the earliest. The Government points out the uncertainty as to when or whether Decay will take any action regarding his right to demand future monthly pension payments from the LSPRF despite the garnishment of his contributions by the Government. Thus, the Government points out that any discussion by this Court on that issue would amount to nothing more than an advisory opinion on matters presently unripe for disposition. As such the declaratory relief sought by the LSPRF is not properly before the Court. Further, the Government contends that any such relief should be sought in the state courts of Louisiana, which would be the best forum for determining the effect, if any, of a federal garnishment of employee contributions on the LSPRF's ongoing obligation under Louisiana law to pay a monthly pension benefit.

Additionally, the Government cites to Ninth Circuit case law cited by the Court in the Garnishment Order explaining that "the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment – rather than merely obtain post-retirement payments . . . if, but only if, the terms of the plan

allow the defendant to demand a lump sum at the present time."
United States v. Decay, 2009 WL 36623 *7 (citing United States v.
Novak, 476 F.3d 1041,1063 (9th Cir. 2007)).  The Government also
notes approvingly the Court's reliance on the position expressed
in Novak that the government generally "steps into the [debtor's]
shoes" and acquires the rights of the debtor. Id. at 1061.  Thus,
the Government contends that the United States is entitled to
step into the shoes of Decay and exercise Decay's right to cash-
out his employee contributions.

As to the LSPRF's objections to the 100% garnishment of
Barre's monthly distributions, the Government notes that this
argument was raised by the LSPRF for the first time on in its
Rule 59(e) motion.   In fact, it was Barre's own attorney, not
the LSPRF, that originally raised the argument that garnishment
should be limited to 25% of Barre's monthly distributions.

Furthermore, the Government notes that the FDCPA does not
explicitly grant a garnishee, such as the LSPRF, standing to file
its own objections to a garnishment.  28 U.S.C. § 3205(c)(5).
Moreover, the Government questions the LSPRF's motive in raising
any such objection, as it is not clear how the LSPRF would be
directly affected by the Court's Order for garnishment of 100% of
Barre's benefit.  Either way, the LSPRF will have to pay 100% of
Barre's pension benefit, whether to Barre or to the Government.

The Government argues that the general rule is that "a party must assert his own legal rights and interests and cannot rest a claim to relief on the legal rights and interests of third parties." United States v. Moyo, 2008 WL 517137, *2 (E.D. La. Feb. 22, 2008)(citing Kowalski v. Tesmer, 543 U.S. 125, 129 (2004)). Consequently, the LSPRF cannot show a sufficiently close relationship with Barre in order to exercise his rights. Moreover, the Government contends that the LSPRF is unable to show any hindrance to Barre's ability to protect his own interest, especially in light of the fact that his own counsel filed a memorandum on his behalf contesting the 100% garnishment. Similarly, the Government urges that the LSPRF's argument regarding the 25% limitation of the CCPA is not timely on its Rule 59 motion, as it was not submitted with the LSPRF's original opposition to the garnishment proceedings.

Nonetheless, the Government addresses the LSPRF's argument that the Court's Order was based on a misunderstanding regarding the nature of the retirement plan which is the subject of these proceedings. The Government argues that contrary to the LSPRF's assertions, neither Laws nor Crawford rested its holding upon a distinction between the LSPRF claims between annuities and monthly retirement plans. Moreover, the Government submits that United States v. Belan correctly explained that "once passed to a

10

retirement account **or** annuity in the hands of the employee, funds in the [retirement] account **or** annuity are not 'earnings' under the CCPA, and thus not subject to the 25% cap, even if they are distributed in periodic payments. . . " 2008 WL 2444496, *4 (E.D. Mich. June 13, 2008)(emphasis added).

Similarly, the Government addresses the LSPRF's contention that <u>Wilson</u> and <u>McClanahan</u> are more reliable authority, stating that even if the LSPRF finds such cases to have persuasive reasoning, the decision of <u>United States v. Lazorwitz</u>, 411 F.Supp. 2d 634, 639 (E.D.N.C. 2005), which ordered garnishment of 100% of the monthly payments from an employer-funded retirement account with IBM, is in direct conflict with the supposed sound reasoning of <u>Wilson</u> and <u>McClanahan</u>.  Finally, the Government argues that while the employer contributions into the pension plan would have been subject to 25% limit on garnishment when the contributions *into the fund* were made, there is nothing in the CCPA or interpretive case law to suggest that a similar limit should be imposed on garnishments *from* the pension plan, as held by this Court in the Garnishment Order.

As to Barre's argument that his monthly pension benefits are partially exempt from garnishment as community property, the Government notes that Barre never raised this particular argument in his initial objections, and thus the argument is improper on

this Rule 59 motion. Similarly, the Government points out that the argument asserted by Barre in his own name is not properly before the Court, as it pertains to an alleged right held by Barbara Barre, an individual who has not intervened in this matter in her own name.

Nonetheless, the Government addresses Barre's community property argument, noting that under the FDCPA, "co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." 28 U.S.C. § 3205(a). Accordingly, the Government argues that Barre's assertion that the restitution obligation is his own separate obligation is incorrect because the conduct that created the obligation of repayment occurred during the Barre community property regime and is thus presumed to be a community obligation, notwithstanding the fact that at the time of the restitution judgment the Barres' had created a separation of property regime. La. Civ. Code arts. 2360-61; Corley v. Craft, 571 So.2d 718, 722 (La. App. 2 Cir. 1990).

Additionally, the Government argues that there is no evidence that the fraud for which Barre has admitted guilt did not result in a benefit to the community, which would allow the application of La. C.C. art 2363 and render the restitution

obligation a separate obligation arising from an intentional wrong not perpetrated for the benefit of the community. Further, the Government points out that the community or separate nature of the restitution obligation is ultimately irrelevant under Louisiana law because "an obligation incurred by a spouse before or during the community property regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation." La. C.C. art. 2357; <u>Bank of Baton Rouge v. Hunerjager</u>, 633 So.2d 340, 341 (La. App. 1 Cir. 1993).

Finally, the Government submits in the alternative that if the Court is inclined to treat Barre's restitution obligation as a personal, separate obligation, there is no effect on the United States as a creditor because the former community property of the Barre marriage may be seized to satisfy Barre's obligation, regardless of its characterization. To the extent that Barbara Barre may have some rights in the pension funds, she may have an action against Barre personally under state law for reimbursement in a community property partition, but that right is irrelevant in the context of these garnishment proceedings.

## LAW AND ANALYSIS

### A. Federal Rule of Civil Procedure Rule 59(e) Standard

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. <u>Bass v. U.S. Dept. of Agric</u>., 211 F.3d 959, 962 (5th Cir.2000). If such a motion is filed within 10 days it is considered under the standards of a Rule 59(e) Motion to Alter or Amend Judgment. <u>Tex. A & M Res. Found. v. Magna Transp., Inc.</u>, 338 F.3d 394, 401 (5th Cir.2003).

A Rule 59(e) motion "calls into question the correctness of a judgment." The Fifth Circuit has held "that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment . . . [but] [r]ather . . . serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." <u>Templet v. HydroChem Inc.</u>, 367 F.3d 473, 478-79 (5th Cir. 2004) (citations and quotations omitted). As such, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." <u>Id</u>. Finally, "Rule 59(e) motions cannot be used to raise arguments that could, and should, have been made before the judgment issued." <u>Marseilles Homeowners Condominium Ass'n Inc. v. Fidelity Nat. Ins. Co.</u>, 542 F.3d 1053, 2008 WL 4150108, 4 (5th Cir.2008). Accordingly, this Court may properly decline to consider new arguments or new evidence on

reconsideration where those arguments were available to the movant prior to the order.

The Court finds under the applicable Rule 59 standards that the motions filed by the LSPRF, Barre, and Decay should all be denied as a matter of law as set forth in further detail below.

**B.  The Final Garnishment Order was Proper as to the LSPRF**

As stated above, a Rule 59(e) motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Moreover, the mere fact that Defendant disagrees with the Court's ruling is not grounds for a motion to reconsider. See Henson v. Odyssea Vessels, Inc., No. 07-613, 2008 WL 89513 (E.D. La. Jan. 7, 2008); F.D.I.C. v. Cage, 810 F. Supp. 757, 747 (S.D. Miss.1993)(holding that a motion that "merely expresses disagreement with the findings of the Court" is not grounds for a motion to reconsider). The LSPRF has not presented new evidence nor has it shown that the Court committed a manifest error of law or fact in entering the Garnishment Order.

As noted above, a motion to amend/alter the Court's order is an improper mechanism by which to raise this untimely argument. Marseilles Homeowners Condominium Ass'n Inc. v. Fidelity Nat. Ins. Co., 542 F.3d 1053, 2008 WL 4150108, 4 (5th Cir.2008). As such, to the extent that the LSPRF seeks an amendment to the

15

Garnishment Order to include a provision that the Government's garnishment of Decay's employee contributions amounts to a waiver of any right to future benefits, the Government correctly points out that the LSPRF failed to raise or identify this argument with any level of specificity. Thus, this issue cannot be considered on a Rule 59(e) motion.

Furthermore, it is well settled that federal courts cannot render advisory opinions. Partners, Inc. v. Life Ins. Co. of N. Am., 203 F.3d 324, 325 (5th Cir. 1999). Any concerns regarding possible future action that Decay may or may not take with respect to future benefits is premature because, as admitted by the LSPRF, Decay will not be eligible for monthly retirement benefits until 2010, at the earliest. Any discussion by this Court on the issue of Decay's hypothetical future invocation of rights to a pension benefit would amount to an advisory opinion on matters presently unripe for disposition. As such the declaratory relief sought by the LSPRF's Rule 59 motion is improper.

Moreover, the Garnishment Order speaks directly to this point, citing the Ninth Circuit's holding that "the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment – rather than merely obtain post-retirement payments . . . if, but only if, the terms of the plan

allow the defendant to demand a lump sum at the present time."
United States v. Decay, 2009 WL 36623 *7 (citing United States v.
Novak, 476 F.3d 1041,1063 (9th Cir. 2007)).  Similarly, the Court
reiterated the sentiments of the Novak court that the government
generally "steps into the [debtor's] shoes" and acquires the
rights of the debtor. Id. at 1061.  As such, the Government may
step into the shoes of Decay and exercise his right to exercise a
cash-out option on his employee contributions, regardless of any
possible future entitlements he may or may not invoke.

**C.  100% Garnishment of Barre's Monthly Benefit is Proper**

To the extent the LSPRF opposes garnishment of 100% of
Barre's pension fund based on the Court's alleged
misunderstanding of the nature of Barre's retirement benefit,
this argument, again, is not properly before the Court.  As
pointed out in the Government's Opposition, it was Barre's own
attorney, not the LSPRF, who originally raised the argument that
garnishment should be limited to 25% of Barre's monthly
distributions.  Accordingly, the LSPRF's failure to raise this
argument in its initial opposition precludes consideration of
that argument under Rule 59(e).  In addition, the Court cannot
discern any interest on the part of the LSPRF in arguing that
100% of Barre's pension benefit should not be garnished.  Whether
the benefit is paid 100% to Barre or 100% to the Government is of

17

no moment to the LSPRF.  As such, under Rule 59 standards and principles of standing, the LSPRF's motion should be denied.

Furthermore, and despite the LSPRF's contention that the Court's analysis was based on a misunderstanding of the law as it relates to defined benefit plans and annuity contracts, the Court was correct in holding that 100% of Barre's monthly distributions are subject to garnishment.  As explained in <u>United States v. Belan</u>, "once passed to a retirement account **or** annuity in the hands of the employee, funds in the [retirement] account **or** annuity are not 'earnings' under the CCPA, and thus not subject to the 25% cap, even if they are distributed in periodic payments. . . " 2008 WL 2444496, *4 (E.D. Mich. June 13, 2008)(emphasis added).  Thus, any purported distinction raised by the LSPRF to discount the analytical soundness of the Court's order for garnishment of 100% of the distributions is made in vain.  Furthermore, these arguments could and should have been raised in the LSPRF's initial opposition to the garnishment proceedings, and are thus improper on this Rule 59(e) motion.

Notwithstanding the untimeliness and standing concerns associated with the LSPRF's arguments on this point, the LSPRF's contention that the <u>Laws</u> and <u>Crawford</u> decision say "exactly the opposite of what [this Court] cited [them] for" is categorically incorrect.  The Court cited the <u>Laws</u> case for the proposition

that funds that have already left the hands of the employer may be subject to garnishment under the MVRA and the CCPA. See Garnishment Order, Rec. Doc. 421 at 17-18. The LSPRF contends that "[t]he sole gravamen of the [<u>Laws</u>] analysis was to distinguish the annuity from a retirement plan . . . [and that the] plain language of § 1672(a) [of the CCPA] indicates that it is meant to protect funds as they pass from employer to employee." Rec. Doc. 427, Memorandum in Support, 3-4. This myopic summary of the <u>Laws</u> decision is erroneous on its face and ignores the remainder of the jurisprudence cited by the Court in support of the Garnishment Order. First, the distinction primarily relied on by the <u>Laws</u> court was not that between a defined contribution and a defined benefit plan, but rather between payments *into* a pension fund by an employer - which constitute "earnings" under the relevant CCPA 25% exemption provisions - and payments *out of* a pension fund, which are not exempt. 352 F. Supp. 2d 707, 713 (E.D. Va. 2004). Only after drawing this distinction between payments into and out of a retirement plan did the <u>Laws</u> court go on to distinguish between contributions to a voluntary defined contribution plan versus an involuntary defined benefit plan. <u>Id</u>. Furthermore, the <u>Belan</u> and <u>Sinclair</u> decisions, which the LSPRF ignores in its Rule 59(e) motion, are further support for the Court's decision. In fact,

Belan specifically relied on Laws and Crawford to support its holding, notwithstanding any tangential issue of the distinction between defined contribution and defined benefit plans. See 2008 WL 2444496, *3 (E.D. Mich. June 13, 2008). Thus, to the extent that there may be merit to the LSPRF's arguments under Laws, the other cases cited in the Garnishment Order support the validity of this Court's decision. As such, the LSPRF's present motion should be denied.

### D.   Barre's Community Property Argument is Unavailing

To the extent that Barre opposes garnishment of his LSPRF pension benefits based on their possible nature as community property, the opposition is not properly before the Court because Barre did not raise the issue of community property in his initial objections to the garnishment proceedings.

Notwithstanding that the issue is not properly presented, the Court notes that "Congress has decreed that federal criminal fines and restitution orders are to be treated as if they were debts for delinquent taxes." United States v. Sowda, 2003 WL 22902613, *2 (E.D. La. Dec. 8, 2003)(citing 18 U.S.C. § 3613(a), (c)).  Tax debts have consistently been characterized as community obligations as a matter of Louisiana law. See Karmazin v. Wheeler, 1992 WL 31857, *3 (E.D. La. Feb. 12, 1992).  As such, the restitution order, by means of the Congressionally mandated

analogy to delinquent taxes, should be categorized as a community debt under Louisiana law, and thus any community property should be subject to garnishment under the MVRA and La. Civ. Code art. 2357. Furthermore, another section of this Court in <u>United States v. Sowada</u>, even applying the more lenient debtor-friendly provisions of the pre-MVRA FDCPA, upheld the garnishment of the defendant-debtor's pension funds notwithstanding a claim that they were exempt as community property. 2003 WL 22902613, *2 (E.D. La. Dec. 8 2003) (Zainey, J.). Consequently, because the <u>Sowada</u> Court held that it was permissible to garnish community property pension funds under Louisiana law under the FDCPA, which entails more lenient provisions than the MVRA, the argument that any possible community property claim could invalidate the present garnishment proceedings under the preemptive provisions of the MVRA is unconvincing. Thus, Barre's argument that a partition of the community property is warranted to limit the amount garnished from his pension proceeds is misplaced.

In the end, the arguments raised by the LSPRF, Barre, and Decay are either improper under Rule 59 standards, unavailing as a matter of law, or both. Accordingly,

**IT IS ORDERED** that the LSPRF's **Motion and Memorandum in Support of Motion for New Trial and/or to Alter and/or Amend a**

Judgment Pursuant to Federal Rules of Civil Procedure Rule 59 is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Barre's **Motion for New Trial and/or to Alter and/or Amend a Judgment Pursuant to Federal Rules of Civil Procedure Rule 59 (Rec. Doc. 430)** is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Decay's **Motion for New Trial and/or to Alter and/or Amend a Judgment (Rec. Doc. 432)** is hereby **DENIED.**

New Orleans, Louisiana, this 12th day of March, 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE