UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 05-186

KERRY DE CAY                                SECTION: J(1)

**ORDER**

Before the Court is Defendant Kerry Decay's **Motion to Vacate under 28 U.S.C. 2255 (Rec. Doc. 323)**, in which Decay seeks to have the collateral attack and appeal waivers struck from his plea agreement and to have an amended judgment entered so that he might appeal his sentence as imposed by this Court (See Rec. Docs. 286 & 326) subsequent to his guilty plea.

This motion was set for an evidentiary hearing on April 9, 2009 for determination of facts related solely to Decay's claims of ineffective assistance of counsel with respect to his attorney's failure to file an appeal or discuss Decay's appellate options. However, the Government has informed the Court by letter of April 3, 2009, that, without conceding Decay's ability to prove by a preponderance of the evidence the facts required for habeas relief under the principles set forth in the Supreme Court's decision in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), as well as the Fifth Circuit's decision in <u>United States v. Tapp</u>, 491 F.3d 263 (5th Cir. 2007), the Government is unopposed to

1

Decay's motion insofar as it seeks to take an out-of-time appeal of his sentence based on his claims under <u>Flores-Ortega/Tapp</u>.

However, in addition, the Government's April 3, 2009 letter requests a ruling on the other issues raised in Decay's motion that do not require an evidentiary hearing for their disposition, namely Decay's claims that his due process rights under the Fifth Amendment and his right to effective assistance of counsel under the Sixth Amendment were violated when he unknowingly and unintelligently entered the collateral attack and appeal waivers included in his plea agreement.

As such, in light of the Government's lack of opposition to an out-of-time appeal on Decay's <u>Flores-Ortega/Tapp</u> claims, and after review of the record, the memoranda of counsel, and the applicable law, the Court finds as follows.

## **BACKGROUND FACTS AND PROCEDURAL HISTORY**

On September 20, 2006, the Grand Jury for the Eastern District of Louisiana returned a twenty-one count superseding indictment charging Decay and three co-defendants with violations of Conspiracy to Commit Mail Fraud, Mail Fraud, Extortion under Color of Official Right, False Statements, Obstruction of Justice and Money Laundering. Decay was charged in Count 1 with conspiracy to commit mail fraud, under U.S.C. §§ 371 and 1341. Decay was also charged in counts 2, 3, 4, 11, 12, 13, 14, 15, 16,

17, and 18 with mail fraud; in count 10 with obstruction of justice; and in counts 20 and 21 with extortion.

On January 14, 2007, pursuant to a plea agreement signed by Decay, defense counsel, and counsel for the United States, Decay entered a plea of guilty to counts 1, 4, and 10 of the superseding indictment. The preceding day, Decay and defense counsel signed the factual basis for the guilty plea at the U.S. Attorney's office. In that factual basis, Decay agreed that if the case were taken to trial, the government would be able to present evidence which would establish his guilt on counts 1, 4, and 10 of the superseding indictment.

During the plea hearing, Decay and his defense counsel both acknowledged to the Court that they had read, understood, discussed, and signed the plea agreement. The plea agreement in pertinent part contains the following appellate and post-conviction waiver provisions:

> Except as otherwise provided in this paragraph, the defendant hereby **expressly waives the right to appeal his sentence on any ground**, including but not limited to any appeal right conferred by Title 18, United State Code, Section 3742 on the defendant, and **the defendant further agrees not to contest his sentence in any post-conviction proceeding**, including but not limited to a proceeding under Title 28, United States Code, Section 2255. The defendant, however, reserves his right to appeal the following: (a) any punishment imposed in excess of the statutory maximum, and (b) any punishment to the extent it constitutes an upward departure from the Guideline range deemed most

3

applicable by the sentencing court.

At both the plea hearing and again at the sentencing hearing, the Court inquired of Decay whether he understood the meaning of the appeal waiver.  In both instances Decay answered in the affirmative that he understood the waiver and its consequences.

On January 14, 2007, the Court accepted Decay's plea, and found him guilty on counts 1, 4, and 10 of the superseding indictment (Rec. Doc. 325).  On June 22, 2007, the Court sentenced Decay to 60 months on count one, 60 months on count four, and 108 months on count ten, all to run concurrently (Rec. Doc. 326).  The 108 month sentence was at the very bottom of the guideline range of 108-135 months.  Thereafter, Decay filed with the Court a letter dated July 16, 2007, which the Court construed as a request to modify or amend his sentence, and subsequently denied (Rec. Doc. 294).  Finally, on June 30, 2008, Decay filed the instant pro se petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Rec. Doc. 323).  Thereafter, Decay sought and was granted an extension of time to file a memorandum and affidavit in support of his §2255 motion, which were both filed by Decay's current counsel on July 30, 2008 (Rec. Docs. 366 & 367) ("Memorandum in Support" and "Affidavit").

The Court notes that Decay's motion seeks only to challenge the appeal and collateral attack waivers in his plea agreement:

"Because Mr. Decay is guilty of the offenses to which he pleaded guilty, **he does not seek to have his guilty plea vacated**"; and "[B]ecause his guilty pleas to the three offenses were properly entered, he does not seek to vacate those pleas." Decay's Memorandum in Support, Rec. Doc. 366, 2 & 14. (emphasis added). In other words, Decay seeks to appeal his sentence but not his conviction.

## THE PARTIES' ARGUMENTS

Decay raises essentially three arguments regarding alleged violations of his Fifth Amendment Right to due process and Sixth Amendment Right to effective assistance of counsel leading up to and during his decision to plead guilty.[1]

First, Decay asserts that his Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel were violated when he entered a collateral attack waiver unknowingly and unintelligently as the direct result of lack of counsel. Second, Decay argues that his Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel were violated when he unknowingly and unintelligently entered an appeal waiver, preventing him from challenging his sentence on direct appeal. Decay argues that his attorney,

---

[1] Decay has withdrawn the fourth and fifth arguments listed in his original §2255 motion, namely those regarding Lemann's failure to make additional arguments and objections during his sentencing. See Petr. Memo Supp., 2 n.1.

Arthur "Buddy" Lemann ("Lemann"), rushed him to plead guilty without specifically going over the implications of that plea, including the appeal and collateral attack waivers. Decay avers that the proper remedy to correct the unknowing and unintelligent entry of these waivers is the striking of those waivers from the plea agreement.

Decay finally contends that his Sixth Amendment right to effective assistance of counsel was further violated after his plea when he asked Lemann about the possibility of appealing his sentence, and Lemann told him that he had no options, abruptly ended their conversation, and did not fulfil his duty to consult with him about the advantages and disadvantages of taking an appeal. Decay argues that under the principles set forth in the Supreme Court's decision in <u>Flores-Ortega</u>, as well as the Fifth Circuit's application of <u>Flores-Ortega</u> in <u>Tapp</u>, his sentence should be vacated based on Lemann's failure to either file a timely notice of appeal or adequately discuss Decay's appellate options.

Concerning the first argument, Decay concedes that he did in fact sign a plea agreement that contains a collateral attack waiver. Decay argues, however, that the transcript of the plea hearing and his own Affidavit support his contention that he did not understand the meaning of that waiver, and did not even know of the existence of that waiver. Decay asserts that due to Lemann's ineffective assistance, he unknowingly and

6

unintelligently entered into the collateral challenge waiver. Furthermore, Decay argues that the alleged collateral attack waiver does not bar an attack of the plea because the waiver itself resulted from ineffective assistance of counsel.  Finally, Decay argues that the transcript of the plea hearing and his own Affidavit both demonstrate that the Court did not specifically review the collateral attack waiver at his re-arraignment, as required by FRCP 11(b)(1)(n).  Thus, Decay argues that in addition to the invalidity of the waiver due to Lemann's ineffective assistance, the collateral attack waiver was also invalid because the Court did not specifically review that waiver with him and did not explain the difference between the appeal waiver and the collateral attack waiver.

In his second argument, Decay admits that the Court's Rule 11 colloquy did in fact address whether he understood that he was giving up his right to contest his sentence on direct appeal except in the case that his sentence exceeded the statutory maximum.  Decay further admits that he did affirmatively answer that he understood what rights he was waiving.  Decay argues, however, that the Court erred when it did not explain in common, everyday terms the meaning of the "statutory maximum" exception and when the exception might apply so that he could understand the consequences of the waiver.  Decay argues that the meaning of "statutory maximum" is a legal term of art, not a phrase that is commonly understood by ordinary lay persons.  Without this

understanding, Decay avers that it would be impossible for him to have known whether the exception was a broad one making appeal likely, or a narrow exception likely foreclosing any appeal.

Furthermore, Decay claims in his Affidavit that Lemann's conduct severely prejudiced his ability to make an intelligent and knowing decision regarding the waiver. Specifically, the Affidavit alleges that Lemann rushed Decay through the process of entering a plea agreement and signing the factual basis. The Affidavit further claims that Decay was hesitant to sign the documents or even to plead guilty, but that Lemann insisted and repeatedly stated that they could "work out the details later." Petr.'s Memo Supp., Ex. 1. Decay asserts that Lemann's failure to review the agreement with him line by line or even page by page caused him to falsely believe he understood the waiver. Decay claims that he only understood the appeal waiver in the broadest possible terms and essentially understood little more than that he was pleading guilty to three charges in exchange for dismissal of the others. With regards to specifics, Decay asserts that his understanding of his plea agreement was that although the "statutory maximum" in his case was ten years, he believed based on Lemann's advice that he would only be facing four to five years, and thus he would not have to worry about appealing. Decay claims he did not understand that this waiver was broad and could preclude a host of challenges on other grounds. For the foregoing reasons, Decay contends his acceptance of the appeal

8

waiver was unknowing and unintelligent and that counsel was prejudicially ineffective for failing to explain the meaning of the appeal waiver, thereby violating Decay's Fifth and Sixth Amendment rights to due process and effective assistance of counsel.

In his third argument, Decay claims that he was denied effective assistance of counsel when Lemann refused to discuss an appeal with him after his plea and sentencing. Decay argues in the alternative that if the Court does not strike the appeal and collateral attack waivers, the Court should find that he was denied his right to counsel for appeal and should enter an amended judgement to permit him to appeal at this time. Decay asserts that the record demonstrates that he was interested in challenging his sentence, that the attorney brushed off his questions about appealing, and that, but for Lemann's failure to adequately consult with him, he would have appealed. In support of these claims, Decay points to several specific pieces of evidence contained in the record. First, Decay objected to allegations at sentencing that increased his sentence beyond what he felt was appropriate, and he directed counsel to object to what he saw as unsubstantiated and false claims. Second, in Decay's Affidavit, he clearly states that within two weeks of the sentencing hearing he contacted and spoke to Lemann about writing a letter to the Court concerning the sentence and the possibility of appeal. Decay further states that the record makes it

unambiguously clear that Lemann blew him off and refused to discuss the possibility of appeal with him. Third, Decay points to the lack of any formal appeal, noting that after the sentencing hearing and the judgement order, the next document filed was his own *pro se* letter to the Court. Lastly, Decay offers that letter, claiming that the letter was his attempt, albeit incorrectly filed and in layman's terms, to appeal his sentence. In conclusion, Decay argues that even if the Court refuses to strike his collateral attack and appeal waivers, Fifth Circuit case law unequivocally demonstrates that, even if waivers remain in place, denial of the right to counsel and advice on whether to appeal must be corrected, as "the rule of <u>Flores-Ortega</u> applies even where a defendant has waived his right to direct appeal and collateral review." <u>United States v. Tapp</u>, 491 F.3d 263, 266 (5th Cir. 2007).

In opposition, the Government initially makes the procedural argument that Decay's motion is untimely.

Additionally, and in response to the substance of Decay's first and second arguments, the Government argues first that Decay admits that Lemann told him that he would be waiving his right to appeal (Affidavit, ¶ 15, Rec. Doc. No. 367), admits that he "flipped" through the plea letter before signing it (Affidavit, ¶ 11, Rec. Doc. No. 367), and admits he remembers the Court asking him if he understood he was waiving his appellate rights as part of his plea bargain. (Affidavit, ¶ 15, Rec. Doc.

367).  Therefore, the Government argues that Decay's complaint is not that he was unaware that he was waiving his appellate rights, but that he did not receive sufficient explanation that his waiver included collateral challenges to his sentence.  The Government asserts that Decay argues this despite no less than three instance where the Court brought the appeal waiver to his attention before sentencing.  Furthermore, the Government avers that Decay seems to be suggesting that the Court needs to give a detailed explanation of a § 2255 motion in every instance of waiver, rather than expect the defendant to state whether or not he understands the waiver on the Court's inquiry.  As a matter of policy, the Government argues that to grant Decay's requested relief would render the Rule 11 plea colloquy meaningless.  It would allow any defendant to say that he understands the waiver, and then, upon receiving a disagreeable sentence, challenge that sentence despite the waiver.

Finally, as noted earlier, the Government has informed the Court by letter that it does not oppose Decay's request for an out-of-time appeal of his sentence under the principles set forth in <u>Flores-Ortega</u> and <u>Tapp</u>, although the Government does not concede that Decay can meet the evidentiary requirements for a successful challenge of his sentence under those principles.

## LAW AND ANALYSIS

First, with respect to the Government's argument that any issues not raised in Decay's initial § 2255 motion are untimely as they have been raised in his later-filed Memorandum in Support, the Court granted Decay's motion for extension of time to file his memorandum and Affidavit (Rec. Doc. 358) and thus the Government's timing argument is unavailing.

**A.   Legal Standard under 28 U.S.C. § 2255**

"Relief under 28 U.S.C. 2255 is reserved for transgressions of constitutional rights and for  a narrow range of injuries that could not have been raised on direct appeal and would if condoned, result in a complete miscarriage of justice." <u>United States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing <u>United States v. Capua</u>, 665 F.2d 1033, 1037 (5th Cir. 1981).  Generally, § 2255 claims fall under four categories: 1) constitutional challenges; 2) challenges to the district court's jurisdiction to impose the sentence; 3) challenges to the length of a sentence in excess of the statutory maximum; and 4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; <u>United States v. Seyfert</u>, 67 F.3d 544, 546 (5th Cir. 1995).

**B. Waiver of Right to Appeal and Collateral Attack**

A defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement, so long as the waiver is both knowing and voluntary.

See e.g. <u>United States v. Bond</u>, 414 F.3d 542, 544 (5th Cir. 2005) (holding that a "knowing and voluntary" standard applies to a waiver of appeal); <u>United States v. McKinney</u>, 406 F.3d 744, 746 (5th Cir. 2005) ("We apply normal principles of contact interpretation when construing plea agreements."); <u>United States v. White</u>, 307 F.3d 336, 343 (5th Cir. 2002). A district court must first determine whether the waiver was voluntary and knowing, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." <u>bond</u>, 414 F.3d at 544 (<u>citing McKinney</u>, 406 F.3d at 746-47); <u>see also United States v. Ruiz</u>, 536 U.S. 622, 629 (2002). A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the specific detailed consequences of invoking it." <u>Ruiz</u>, 536 U.S. at 630.

When a petition does not allege and the record contains no indication that ratification of the plea agreement was not "voluntary" or knowledgeable, the Court will hold the defendant to the bargain that he made - the Court need not presume that the waiver was ineffective. <u>See White</u>, 307 F.3d at 343; <u>Bond</u>, 414 F.3d at 544 (<u>citing McKinney</u>, 406 F.3d at 746). Furthermore, "when the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the

defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal." <u>United States v. Portillo</u>, 18 F.3d 290, 292-93 (5th Cir. 1994); <u>McKinney</u>, 406 F.3d at 746; <u>Bond</u>, 414 F.3d at 544.

Likewise, guilty pleas must be "voluntary," with their attendant waivers made "'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" <u>Ruiz</u>, 536 U.S. at 629; (quoting <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." <u>Bousley v. United States</u>, 523 U.S. at 614, 628 (1998). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." <u>Taylor v. Whitney</u>, 933 F.2d 325, 329 (5th Cir. 1991).

The Supreme Court's decision in <u>Boykin v. Alabama</u>, 395 U.S. 238(1969), requires a hearing prior to entry of a guilty plea at which the Court must elicit an affirmative showing that the decision to plead guilty was voluntarily and intelligently made. <u>Matthew v. Johnson</u>, 201 F.3d 353, 368 n. 22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural

14

safeguards for assuring that guilty pleas are entered voluntarily and knowingly by requiring "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." <u>United States v. Vonn</u>, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." <u>Id</u>. at 78 (Stevens, J., concurring). However, a determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences; the Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea. See <u>United States v. Gracia</u>, 983 F.2d 625, 627-28 (5th Cir.1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." <u>Id</u>. at 627.

**C. Ineffective Assistance of Counsel with Respect to Decay's Waiver of Appeal and Collateral Attack**

Even if a defendant waives his right to appeal and

collaterally attack his plea and sentence, he can avoid those
waivers based on ineffective assistance of counsel on a showing
that "the claimed assistance directly affected the validity of
that waiver or the plea itself." White, 307 F.3d at 343.
Otherwise, if an appeal and collateral attack waiver barred
ineffective assistance of counsel claims with respect to those
very waivers, "an impermissible boot-strapping" would occur by
precluding review of a waiver or plea which itself was not
voluntary. Id.

An ineffective assistance of counsel claim in the context of
invalidating a plea and waiver is subject to the same standard as
any other ineffective assistance claim set forth in Strickland
v. Washington, 466 U.S. 668 (1984). See United States v.
Hopkins, 2008 WL 4534396, *4 (E.D. La. 2008); United States v.
Jones, 2008 WL 1834257, *1-2 (E.D. La. 2008). To successfully
state a claim of ineffective assistance of counsel under
Strickland, the prisoner must demonstrate (1) that counsel's
performance was deficient and (2) that the deficient performance
prejudiced his or her defense. See Strickland, 466 U.S. at 687.
A failure to establish either prong of the Strickland test
requires a finding that counsel's performance was
constitutionally effective. See 466 U.S. at 696. The Court may
address the prongs in any order. Smith v. Robbins, 528 U.S. 259,
286 n. 14, (2000). To determine whether counsel's performance is

16

constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." Strickland, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. Even when an attorney erroneously estimates his client's potential sentence, the defendant must satisfy this requirement. United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. Strickland, 466 U.S. at 695-96. In this analysis, a defendant's sworn "statements made to the court when a guilty plea is entered carry a strong presumption of verity, and the subsequent presentation of conclusory allegations unsupported by specifics is subject to

17

summary dismissal, as are contentions that in the face of the record are wholly incredible." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977). "Furthermore, a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary." <u>Stumpf</u>, 827 F.2d at 1030.

## D. Decay's Claims for Ineffective Assistance Based on the Appeal and Collateral Attack Waivers in his Plea Agreement

First, it should be noted that Decay's claims regarding the alleged insufficiency of the Court's Rule 11 colloquy to inform him regarding the extent of his waiver of rights to collaterally attack his sentence are foreclosed by the Fifth Circuit's decision in <u>Portillo</u>. The <u>Portillo</u> court held that when the defendant has read and signed a "clearly written and relatively short" plea agreement and "confirmed that he . . . read the agreement, understood its contents, and wished to plead guilty" in open court during a Rule 11 colloquy, he cannot thereafter challenge his waiver based on the insufficiency of his colloquy with the court, "regardless of whether the court specifically admonished him concerning the waiver of appeal." <u>Portillo</u>, 18 F.3d 292-93. As such, Decay's §2255 motion is denied insofar as it challenges the Court's Rule 11 colloquy.

Second, Decay's waiver of appeal and collateral attack in his guilty plea does not in itself bar his right to challenge those waivers based on a theory of ineffective assistance of

counsel.  See White, 307 F.3d at 343.  Decay claims that Lemann's
ineffective assistance of counsel rendered his guilty plea
unknowledgeable because Lemann did not review the plea agreement
with him in detail and pressured him to enter the plea agreement.
Specifically, Decay claims that Lemann did not explain the
significance of the "statutory maximum" exception to the appeal
waiver, which resulted in Decay's belief that he could appeal
unless his sentence was within the 4-5 year range that Lemann
allegedly told him was likely.  Based on the Fifth Circuit's
decision in White, Decay's § 2255 motion based on ineffective
assistance of counsel is an appropriate challenge to his waiver
of appeal and collateral attack of his plea and sentence.

    Nonetheless, the record belies Decay's ineffective
assistance claims on these grounds.  The details of Decay's
ineffective assistance of counsel claim are outlined in his
Affidavit, which was filed along with his Memorandum in Support.
The Affidavit states that Decay was prepared to go to trial on
the charges against him, but began to consider pleading when his
co-defendants themselves pleaded to similar charges. Affidavit, ¶
3.  Decay alleges that he did not initially want to plead based
on purported errors in the government's case against him, but
that Lemann rushed him along by telling him not to worry, that
the details would be worked out later, and that he would be
facing 4-5 years if he pleaded.  Id. at ¶¶ 4-5.  In reliance on

Lemann's advice, Decay alleges that he signed the Factual Basis, despite what he perceived as errors after reading it. <u>Id</u>. at ¶ 8-9. Decay alleges that he does not remember whether he signed the actual plea agreement on the same day as the factual basis, but that he does remember that Lemann did not review the agreement with him, and simply had him sign the last page after Lemann summarized the agreement without mentioning anything about waiver of appeal and after Decay flipped through the agreement <u>Id</u>. at ¶ 11. Decay goes on to allege that although he responded affirmatively to the Court's questions regarding whether he had read and understood the plea agreement, he did not subjectively realize that he could not appeal his sentence if it was beyond the 4-5 year range that Lemann had suggested. <u>Id</u>. at ¶ 16. Decay further contends that he did not even know what a § 2255 motion was until he reached prison and found out from fellow inmates; he claims "it was then that I learned for the first time that my plea agreement had a collateral attack waiver." <u>Id</u>.

While Decay's affidavit makes allegations of ineffective assistance of counsel with respect to his waiver of appeal and collateral attack, these allegations are not born out by the record in this case. First, Decay admits that he "flipped through" *and signed* the written agreement that expressly stated that he was waiving any right to appeal or collaterally attack his conviction and sentence in "any post-conviction proceeding,

including but not limited to a proceeding under [§2255]." Plea Agreement as to Kerry Decay, Rec. Doc. 248 at 2 ("Plea Agreement"). Furthermore, in addition to his signature and admitted perusal of the Plea Agreement, Decay admitted under oath *on two different occasions* that he had read, discussed, signed, and understood the plea agreement that he was entering. The first admission was in Decay's re-arraignment:

> **THE COURT:** Mr. De Cay, did you read this four-page plea agreement letter
>
> **THE DEFENDANT:** Yes, Your Honor
>
> **THE COURT:** Did you also discuss it with your attorney, Mr. Lemann?
>
> **THE DEFENDANT:** Yes, Your Honor.
>
> **THE COURT:** Did you then sign it on the last page?
>
> **THE DEFENDANT:** Yes, Your Honor.
>
> **THE COURT:** I've already covered a number of the things that are set forth in this letter with you, but there's a couple of things I need to cover that I have not yet. One is, in the middle of page 2, where by signing this agreement with the government it states that "the defendant hereby expressly waives the right to appeal his conviction or his sentence on any ground" with one exception, the exception being you reserve the right to appeal in the event I would impose punishment in excess of the statutory maximum. Other than that, you are waiving or giving up any right to appeal your sentence or your conviction. Do you understand that?
>
> **THE DEFENDANT:** Yes, Your Honor.

Decay Rearraignment, Rec. Doc. 325 at 16-17. The second occasion was at Decay's sentencing:

> **THE COURT:** Mr. DeCay, because of the Plea Agreement that you and your attorney entered into with the government, you have essentially waived the right to appeal the

sentence that I've just imposed. The exception being, correct me if I am wrong, counselor, I believe it's the standard exception, that is, if the Court would somehow impose an illegal sentence, a sentence beyond the statutory language.

**MS. MANN**: That's right. It was the standard language.

**THE COURT**: But for that, you have waived the right to appeal your conviction or your sentence. Just out of an abundance of caution, I will advise you that if for any reason you thought you had a right to appeal your sentence, any such appeal would ordinarily have to be filed within 10 days from today. If you need an attorney to represent you for such an appeal and you could not afford an attorney, the Court would appoint an attorney for you, and if you needed a copy of the transcript of today's sentencing hearing or, for that matter, any other hearing or proceeding in your case and you could not afford those transcripts, we would furnish those transcripts to you without any cost to you. Do you understand those rights, sir?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: All right.

Decay Sentencing, Rec. Doc. 326 at 43-44.

These admissions in open court belie Decay's claims that he did not subjectively understand the extent and nature of his waiver of appeals. As the Supreme Court held in <u>Blackledge v. Allison</u>, a defendant's sworn "statements made to the court when a guilty plea is entered carry a strong presumption of verity, and the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." 431 U.S. 63, 74 (1977).

Furthermore, Decay's admissions in open court affect his

ability to meet the two-prong <u>Strickland</u> standard necessary for success on his ineffective assistance claims. First, it should be noted that a defendant's reliance on his attorney's suggestion of a possible sentence is not grounds for an ineffective assistance claim. Further, even if Lemann's assistance was in some way ineffective based on his failure to discuss the plea agreement with Decay in sufficient detail, it is unclear that Decay's insufficient understanding of the waiver provisions affected his decision to plead based on the fact that there were *three separate occasions* (signing the Plea Agreement, Re-arraignment, and Sentencing) upon which Decay could have asked for clarification of his rights under the plea agreement. Decay's silence and sworn acquiescence in the provisions of his plea agreement on all these occasions suggests that the appeal and collateral attack waivers were not crucial to his decision to plead.

Additionally, even if Lemann's assistance was ineffective, Decay has not met the "prejudice" prong of the <u>Strickland</u> test "because he has not shown that, but for his counsel's allegedly erroneous advice, he would not have pleaded guilty or waived his appeal rights." <u>United States v. James</u>, 2007 WL 2323385, *10 (E.D. La. 2007). In <u>James</u>, the court held that the defendant could not prove that the alleged ineffective assistance of counsel affected his decision to plead because his co-conspirator

had signed an identical indictment implicating him and had agreed to testify against him. Id. Further, the defendant in <u>James</u> avoided the risk of conviction on several other substantial charges which were not brought as a result of his plea. Id. Similarly, Decay's co-defendants had already pled or were planning to plead under the same indictment at the time of Decay's plea, and Decay avoided several additional charges that would have been brought at trial by entering the plea agreement. Therefore, as in <u>James</u>, Decay has not shown that Lemann's alleged ineffective representation prejudiced his decision to plead.

Also, as noted by the Government, the relief sought by Decay would render the Rule 11 colloquy, and perhaps the entire plea process, irrelevant if a defendant who has pleaded guilty and is not satisfied with his sentence can simply claim that his attorney did not "go over [the] plea agreement . . . line by line, paragraph by paragraph, or even page by page" to defeat his appeal waiver based on his subjective and self-serving lack of understanding of the waiver. Petr.'s Memo Supp., 14. As noted above, a determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences; the Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea. See

<u>United States v. Garcia</u>, 983 F.2d 625, 627-28 (5th Cir. 1993).
Thus, the various admissions by Decay that he knew and understood
the waiver provisions of his plea agreement defeat his present
petition.

Finally, Lemann's own affidavit states that "[w]hile [he]
may not have explained each word of each sentence, [he] did
throughly explain that [Decay] was giving up his right to appeal
his sentence or to challenge his sentence in any way except if it
went above the statute's maximum penalty or exceeded the
Sentencing Guidelines."  Lemann Affidavit, Rec. Doc. 373, Ex. 1,
¶ 4.  Further, Lemann asserts that Decay "indicated he understood
the terms of the plea agreement including that he was waiving his
right to appeal his sentence."  <u>Id</u>.  Based on Lemann's vigorous
advocacy of Decay during the rearraignment, at which Lemann
obtained the redaction of a portion of the Factual Basis (Rec.
Doc. 325, at 20-22), and during the sentencing, at which Lemann
argued strenuously for a decrease in Decay's guidelines
calculation (Rec. Doc. 326, at 3-21), it is unlikely that Lemann
would have so inadvertently omitted a discussion of the waiver of
appeal and collateral attack provisions in his discussions with
Decay.  Furthermore, Decay himself admitted that he was satisfied
with Lemann's services during his re-arraignment, which took
place *after* the alleged insufficient discussions of the plea
agreement.  While it is true that Decay might only have learned

that the discussions with Lemann were insufficient after his plea, the gist of his ineffective assistance allegations are based on Lemann's alleged rushed and cursory review of the plea documents *prior to* the re-arraignment. Thus, Decay's admission in open-court that he was satisfied with Lemann's representation also casts doubt on his ineffective assistance of counsel claims.

Decay's claims are similar to those at issue in <u>United States v. Hopkins</u>. 2008 WL 4534396 (E.D. La. 2008)(Vance., J.). In <u>Hopkins</u>, the defendant pled guilty to two counts of drug and firearms violations, and stated in her re-arraignment that she understood her plea agreement, including provisions regarding her waiver of rights to appeal and collaterally attack her sentence, and that she was satisfied with her representation. <u>Id</u>. at *2. After the defendant's motion to withdraw her plea and appeal of her conviction were denied, she filed a § 2255 challenge based on ineffective assistance of counsel. <u>Id</u>. at *2-3. Specifically, the defendant claimed that her counsel did not inform her that the government would have to prove certain facts to convict her on one of the charges. <u>Id</u>. at *5. The court found that the defendant's admissions in open court during her re-arraignment that she was aware that the government would have to prove these facts belied her claim that her counsel had not informed her of that requirement. <u>Id.</u> Furthermore, with respect to a portion of the defendant's claim based on her counsel's failure to move for

suppression of her confession, the court noted that the defendant had not asserted this claim in her earlier motion to withdraw and appeal. <u>Id</u>.

While the <u>Hopkins</u> case did not directly involve the specific issue of ineffective assistance of counsel in the context of an appeal waiver, the court's holdings are applicable to the facts of this case. First, just as the defendant in <u>Hopkins</u>, Decay admitted several times that he understood the scope and nature of the waiver provisions in his plea agreement. Thus, as in <u>Hopkins</u>, Decay should be held to his in-court admissions regardless of his claims of ineffective counsel. Also, just as the defendant in <u>Hopkins</u> omitted one of the grounds for her § 2255 motion from her earlier challenges to her plea, Decay did not mention any issue whatsoever regarding either his misunderstanding of his plea agreement or the alleged ineffectiveness of his counsel in his July 16th letter to the Court. Rec. Doc. 294, Attachment 1. Thus, as in <u>Hopkins</u>, Decay's motion under § 2255 based on ineffective assistance of counsel with respect to his appeal and collateral attack waivers should be dismissed.

Finally, the main case cited by Decay in support of his ineffective assistance claims with respect to the appeal and collateral attack waiver is inapposite. The Fifth Circuit in <u>United States v. Baty</u> held that a defendant's waiver of appeal

rights in plea agreement must be "informed and voluntary" in granting the defendant's appeal of her sentence over the Government's argument that she had waived her rights in the plea. 980 F.2d 977, 978 (1993). However, the <u>Baty</u> decision is crucially distinguishable based on the fact that the defendant in that case "[o]n more than one occasion . . . **specifically asked the court to explain [the waiver paragraph] of the plea agreement**." <u>Id</u>. (emphasis added). As noted at length above, the record in this case is completely devoid of *any* confusion, much less direct questioning by Decay, regarding the appeal provisions of his plea agreement.

Decay's statements in open court at several intervals over the course of his plea and sentencing belie his claims that he did not understand the post-conviction appeal and collateral attack implications of his plea agreement. Further, Decay's letter to the Court seeking a reconsideration of his sentence did not make any mention whatsoever of the alleged issues of confusion and ineffective assistance of counsel. For these reasons, and as a matter of law, Decay's claims of lack of due process and ineffective assistance of counsel with respect to his waiver of appeal and collateral attack have no merit. As such, the appeal and collateral attack waivers in Decay's plea agreement will not be stricken.

**D.  Decay's Claims for Ineffective Assistance of Counsel**

**under <u>Flores-Ortega/Tapp</u>**

As noted previously, the Government is unopposed to an order granting Decay an out-of-time appeal of his sentence based on the principles set forth in the <u>Flores-Ortega/Tapp</u> line of cases. Accordingly,

**IT IS ORDERED** that Decay's **Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Rec. Doc. 323)** is hereby **DENIED IN PART** as to Decay's claims under the Fifth and Sixth Amendment based on the alleged ineffective assistance of counsel that rendered Decay's waiver of appeal and collateral attack of his sentence unknowing and unintelligent.

**IT IS FURTHER ORDERED** that Decay's motion, insofar as it seeks an amended judgment authorizing an out-of-time appeal of his sentence under the principles of the <u>Flores-Ortega/Tapp</u> line of cases, is **GRANTED** in light of the Government's lack of opposition to the out-of-time appeal.

New Orleans, Louisiana this __9th__ day of April, 2009.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE